UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN MARCHETTI,<br><br>    Plaintiff,<br><br>    v.<br><br>SUPERIOR COURT OF CALIFORNIA, et al.,<br><br>    Defendants. | Case No. 15-cv-05523-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS COMPLAINT**<br><br>Dkt. Nos. |

## INTRODUCTION

After receiving a citation for her vehicle's outdated registration, plaintiff Kathleen Marchetti failed to appear in traffic court by the date indicated on her citation. This triggered a series of events that ultimately resulted in the suspension of her driver's license and an approximately $595 fine, which she paid in order to reinstate her license. Alleging a violation of her constitutional right to due process and seeking relief under 42 U.S.C. § 1983 and California Civil Code section 52.1, Marchetti brought a putative class action against the Department of Motor Vehicles ("DMV"), the Superior Court of California for the City and County of San Francisco and the Office of the Clerk of the Superior Court (together the "Superior Court"), the California Judicial Council, Tim Guinasso (a court clerk), Jeannette Santos (Guinasso's supervisor), and AllianceOne Debt Collections (an entity that collects fines for the Superior Court).

I granted defendants' motions to dismiss with leave to amend on June 9, 2016. Dkt. No. 52. I said that what is alleged to have happened to Marchetti is obviously frustrating, but her claims do not appear to be cognizable in federal court. If what Marchetti seeks is to set aside her failure to appear in Superior Court, she is barred from doing so by the *Rooker-Feldman* doctrine. If her complaint is read as encompassing a broader challenge to the entire process she has been

afforded, she has failed to state a claim for a proper due process violation. The state-affiliated defendants are also protected under either the Eleventh Amendment or judicial immunity. And because she has not established a violation of either her constitutional or statutory rights, her California Civil Code section 52.1 claim and her claims for declaratory and injunctive relief also fail.

On June 29, 2016 Marchetti filed her First Amended Complaint ("FAC") alleging the same violations and adding Jean Shiomoto (director of the DMV) as a defendant. Defendants move to dismiss the FAC for the same reasons as before.

In the FAC, Marchetti alleges virtually the same facts and claims as in the initial complaint. Dkt. No. 52. The same defects I identified earlier remain and plaintiff cannot overcome them. This time, I GRANT defendants' motions to dismiss without leave to amend.

**BACKGROUND**

In 2013, Marchetti owned a 1996 General Motors Company Suburban that she had not been using and had not registered with the DMV. She decided to register it to return it to operational status. FAC. ¶¶ 12.7-13 (Dkt. No. 53).[1]

A current SMOG certificate is required to secure registration for a vehicle. *Id.* ¶ 13. In December 2013, Marchetti received a one day permit from the DMV allowing her to drive her vehicle, with expired registration, to a SMOG test station. *Id.* ¶ 15. The SMOG test was not successful, and Marchetti was informed that she would have to have work done to her vehicle's engine. *Id.* ¶ 16.

The next day, on December 12, 2013, San Francisco police officers stopped Marchetti for outdated registration tags while she was on her way from the SMOG test station to her mechanic. *Id.* ¶ 17. The police officers issued Marchetti a citation for violation of California Vehicle Code section 4000(a), operating a motor vehicle without current valid registration. *Id.* ¶ 20. The citation was entitled "Notice to Appear" and indicated that Marchetti must appear at the Traffic/Nontraffic – Infraction Division of the Superior Court on or before January 13, 2014 in

---

[1] The factual background has been compiled from the complaint and the judicially noticeable record.

accordance with the instructions printed on the back of the citation. DMV RJN, Ex. 6 (Dkt. No. 26-1).[2] Marchetti claims that an officer described the ticket as a "fix it" ticket explaining that "all [she] needed to do was get the vehicle to pass a SMOG test, take the test results to the DMV for a new registration, [and] get the Notice of Violation signed off and sent to the superior court, which would amount to full compliance with the 'fix it' provisions of the ticket." *Id.* ¶ 23.

Marchetti did not complete any of the officer's instructions by January 13, 2014.[3] Instead, on March 15, 2014, Marchetti returned to the DMV to get a new registration. *Id.* ¶ 28. She presented proof of a successful SMOG test, proof of insurance, payment of the required fees, and her Notice of Violation. *Id.* The DMV clerk signed off the Notice of Violation as having been "fixed." *Id.* Marchetti then sent the signed notice to the Clerk of the Superior Court. *Id.* ¶ 29. Marchetti alleges that at this point she "believed that the entire matter [] had been satisfied and was no longer an issue." *Id.*

A few months later, on August 31, 2014, Marchetti was stopped by a Broadmoor police

---

[2] Federal Rule of Evidence 201 allows courts to take judicial notice of a fact not subject to reasonable dispute because it: "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Additionally, the "incorporation by reference" doctrine allows courts "to take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Finally, a court may take judicial notice of "proceedings in other courts." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cit. 1992). The Superior Court's request for judicial notice of Exhibits A-C , Dkt. No. 57 is GRANTED because these documents are part of this court's or the Superior Court's records. The Superior Court's request for judicial notice of Exhibits D-F, Dkt. No. 57, and AllianceOne's renewed request for judicial notice of both Exhibits 1, Dkt. Nos. 35, 36, are GRANTED because they are incorporated by reference in the complaint. Similarly, DMV's request for judicial notice of Exhibits 1-7 was previously GRANTED, Dkt. No. 26, and remains relevant here. Marchetti's request for judicial notice with regards to Exhibits 1-4 under the incorporation by reference doctrine was previously GRANTED and remains relevant here. Dkt. No. 31-1. I previously DENIED Marchetti's request for judicial notice of Exhibits 5-9 because they were not referenced in her complaint nor were they appropriate subjects for judicial notice under FRE 201. Marchetti does not renew her request for judicial notice now, but includes, in her omnibus response, a declaration that attaches the same Exhibits 1-9 and a new Exhibit 10. I do not consider Exhibits 5-10 as they have not been properly incorporated into the complaint. Even if Exhibits 5-10 had been considered, they would not change the outcome of this Order.

[3] According to the language above the signature line, by signing the citation Marchetti promised to appear at the time and date indicated on the citation. While the check box in the "date" category is unchecked, the January 13, 2014 date has been clearly written in. Marchetti argues that this citation should not be considered because it is not signed by the officer; however, she fails to specify where on the citation a signature would be required in this circumstance.

3

officer due to a nonfunctioning tail light and was informed that her driver's license was suspended. *Id.* ¶ 33. The police officer took her license and informed her that she could not recover it until she cleared a failure to appear with the DMV. *Id.* ¶ 36. Marchetti claims that she was unaware her license was suspended because she had received no notice "from the DMV or any other source" regarding the suspension. *Id.* ¶ 34. On March 14, 2014, however, the DMV had mailed Marchetti an Order of Suspension to her address of record. DMV RJN, Ex. 3.

When Marchetti visited the DMV on September 2, 2014, she was informed that her license had been suspended for failure to appear in the Superior Court. *Id.* ¶ 41. The next day, Marchetti went to the Office of the Clerk of the Superior Court, where Guinasso, a court clerk, explained that Marchetti "had a registration violation in December 2013 and that Plaintiff Marchetti didn't appear at a court date which is why Plaintiff Marchetti [sic] license was suspended and revoked." *Id.* ¶ 43. Marchetti repeatedly requested a hearing before a judge who could set aside her failure to appear, order the reinstatement of her license, lower or eliminate the fine, or help Marchetti regain her driver's license. *Id.* ¶ 45. She was informed that she had no right to a hearing at that time or to any other form of judicial review of the fine. *Id.* ¶ 50. Guinasso explained that if Marchetti paid a fine imposed by the Superior Court to AllianceOne, her license would be reissued within 72 hours. *Id.* ¶ 53. Dissatisfied with this advice, Marchetti asked to speak to Santos, Guinasso's supervisor. *Id.* After explaining her story to Santos, Santos reiterated that Marchetti should have sent in a $25 check in March or April and that she was not currently entitled to a hearing before a judge. *Id.* ¶ 56.

Soon thereafter, Marchetti contacted AllianceOne representatives to request a hearing with their agency, which they denied. *Id.* ¶ 65. Marchetti requested hearings from the Clerk of the Superior Court and from the DMV in writing throughout September 2014. *Id.* ¶ 46. The Clerk of the Superior Court never responded to Marchetti's letter, and the DMV told her that she had no right to a hearing before the DMV's hearing office. It instructed her to pay the fine to AllianceOne. *Id.* ¶¶ 67-70. On December 3, 2014 Marchetti paid the fine requested by AllianceOne, and received her license one week later. *Id.* ¶ 72.

Marchetti's complaint encompasses three claims: (1) violation of 42 U.S.C. § 1983; (2)

violation of California Civil Code section 52.1; and (3) declaratory and injunctive relief under California Civil Code section 3422.  She seeks damages "commanding the return of funds" she paid to AllianceOne, "an injunction preventing further fines and license suspension absent constitutional notice and an opportunity to be heard," and attorney's fees.  *Id.* at p. 35.

## LEGAL STANDARD

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## DISCUSSION

Defendants again argue that the complaint should be dismissed for multiple reasons, including that: (1) the action is barred by the *Rooker-Feldman* doctrine; (2) Marchetti fails to state a section 1983 claim; (3) the Eleventh Amendment precludes a court from asserting jurisdiction over the DMV and Jean Shiomoto, the Superior Court, and the Judicial Council; (4) judicial immunity protects Guinasso and Santos; (5) Marchetti's claim under California Civil Code section 52.1 fails because she has not demonstrated a violation of her constitutional or statutory rights;

and (6) she is not entitled to declaratory or injunctive relief.  I agree.

## I. ROOKER-FELDMAN DOCTRINE

Under the *Rooker-Feldman* doctrine, which takes its name from the Supreme Court's decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), "when a losing plaintiff in state court brings a suit in federal district court asserting as legal wrongs the allegedly erroneous legal rulings of the state court and seeks to vacate or set aside the judgment of that court, the federal suit is a forbidden de facto appeal." *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003).  "The federal plaintiff is also barred from litigating, in a suit that contains a forbidden de facto appeal, any issues that are 'inextricably intertwined' with issues in that de facto appeal." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1142 (9th Cir. 2004).  "The inextricably intertwined test thus allows courts to dismiss claims closely related to claims that are themselves barred under *Rooker-Feldman*."  *Id*.  "This doctrine applies even when the challenge to the state court decision involves federal constitutional issues." *Worldwide Church of God v. McNair*, 805 F.2d 888, 891 (9th Cir. 1986).

As they did with regards to the first complaint, defendants argue that the *Rooker-Feldman* doctrine prevents a federal court from exercising jurisdiction over Marchetti's case because she is ultimately seeking to set aside the Superior Court's judgment and the ensuing consequences.  Marchetti again opposes this characterization of her complaint, arguing instead that there has been no judicial determination in her case because she has never actually had a "day in court," and that her complaint challenges the lack of constitutional due process afforded by defendants and the state court's rules, not any one particular judicial act.  Opposition ("Oppo.") 12 (Dkt. No. 61).

I addressed Marchetti's first argument in my prior order and noted that there is no requirement that a plaintiff have appeared in an underlying proceeding in order for the *Rooker-Feldman* doctrine to apply.  Multiple courts within this Circuit have applied the doctrine to prohibit challenges to default judgments in state court where the plaintiffs had not meaningfully participated.  *See, e.g.*, *Bryant v. Gordon & Wong Law Grp., P.C.*, 681 F. Supp. 2d 1205, 1208 (E.D. Cal. 2010) (applying the *Rooker-Feldman* doctrine to bar a challenge to a default judgment in state court where the plaintiff had never been served with defendant's complaint and his bank

accounts were garnished without prior notice); *Grant v. Unifund CCR Partners*, 842 F. Supp. 2d 1234, 1238 (C.D. Cal. 2012) (applying the *Rooker-Feldman* doctrine to a default judgment where the plaintiff had been served but had never responded). The Superior Court's notice of judgment, incorporated here as an official court record, demonstrates that Marchetti's failure to appear by January 13, 2014 triggered a civil assessment against her, similar to a default judgment, and that she had twenty days following the notice to request a Trial de Novo, which she did not do. Judicial Defendant's RJN, Ex. B, Dkt. No. 57. *See* San Francisco Superior Court Local Rule 17.1(C) ("When any person fails to appear in Traffic Court or fails to pay all or part of a fine, the Court will notify the Department of Motor Vehicles to cause suspension of that person's driver's license."); DMV RJN, Exs. 5, 6 (A letter from the DMV to Marchetti explaining that "attached is a list of outstanding tickets received from the court[]" along with a list that provides the name and address of the Superior Court, a docket number along with the notation "FTA," the date of the violation, the sections violated.).[4] Accordingly, to the extent Marchetti's complaint seeks to set aside her failure to appear, she is prohibited from pursuing this type of de facto appeal in federal court.

## II. SECTION 1983 (FIRST CAUSE OF ACTION)

Marchetti's claim that the entire process, or lack thereof, afforded to her by defendants violates her constitutional right to due process fails to present a viable claim under 42 U.S.C. § 1983.[5]

Section 1983 provides in relevant part that "[e]very person who, under the color of any statute ... subjects ... any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and law,

---

[4] During the May 11, 2016 hearing, counsel for DMV explained that because of the particular circumstances of traffic court, a default judgment arises as a matter of law when a person fails to appear.

[5] Marchetti's allegations regarding her section 1983 claim also refer to violations of her "First Amendment Right to Travel" and "her right to drive." FAC. ¶¶ 96, 120. To the extent her section 1983 claim is based on these supposed violations, she has failed to state a claim supporting the existence of such rights or violations thereunder. *See Miller v. Reed*, 176 F.3d 1202, 1206 (9th Cir. 1999) (holding there is no "fundamental right to drive" and "that burdens on a single mode of transportation do not implicate the right to interstate travel") (internal quotation marks omitted).

7

shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. A successful section 1983 claim must establish: "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632 (9th Cir. 1988) (citations omitted). The "first step in any [section 1983] claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citations omitted).

"It is clear that the Due Process Clause applies to the deprivation of a driver's license by the State" and that "licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment." *Dixon v. Love*, 431 U.S. 105, 112 (1977). At a minimum the Due Process Clause requires "that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id*. at 314. Additionally, "some form of hearing is required before an individual is finally deprived of a property [or liberty] interest." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). The opportunity to be heard "must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).

Marchetti argues that she did not receive adequate notice in this case because she never received the mailed notice from the DMV. Oppo. 8. Additionally, she asserts that the DMV should have been required to send notice to her online account. *Id*. These contentions do not amount to a deprivation of due process.

Under the California Vehicle Code, the DMV must send a notice of a suspended license by first-class mail to the most recent address provided. Cal. Veh. Code § 13106(a) ("It shall be a rebuttable presumption, affecting the burden of proof, that a person has knowledge of the suspension or revocation if notice has been sent by first-class mail by the [DMV] pursuant to this section to the most recent address reported to the department pursuant to Section 12800 [driver's license application] or 14600 [requiring persons to notify DMV of change of address within 10

8

days], or any more recent address on file if reported by the person, a court, or a law enforcement agency, and the notice has not been returned to the department as undeliverable or unclaimed."). Multiple courts within this Circuit have found that this section of the California Vehicle Code, along with other interrelated provisions, satisfy the due process rights of drivers subject to license suspension or revocation. *See, e.g.*, *Schneider v. Sutter Amador Hosp.*, No. 14-cv-00804, 2014 WL 5473545, at *11 (E.D. Cal. Oct. 28, 2014), *aff'd*, 621 F. App'x 480 (9th Cir. 2015); *Whitsitt v. City of Tracy*, No. S-10-0528, 2012 WL 5210805, at *8 (E.D. Cal. Oct. 22, 2012); *Banks v. Dep't of Motor Vehicles for Cal.*, 419 F. Supp. 2d 1186, 1196 (C.D. Cal. 2006).

Here, this provision has been satisfied. The DMV mailed an Order of Suspension to Marchetti's address of record on March 14, 2014. DMV RJN, Ex. 3 (Dkt. No. 26-1). The Order of Suspension explained that Marchetti's driving privileges would be suspended as of a future date, April 2014, due to her failure to appear. DMV RJN, Ex. 5. The Danville address to which the notice was sent matches the address she provided in her December 12, 2013 citation. DMV RJN, Ex. 6. Based on Marchetti's allegations that she moved "[d]uring the last week of March 2014," the Danville address would appear to have been the most updated address as of the date of the mailing. FAC. ¶ 30. Marchetti cites no authority supporting an independent requirement that the DMV must also inform her of her suspension on her online account.

In addition, Marchetti claims that she was denied the opportunity to be heard regarding her license suspension and fine. *Id*. ¶¶ 105, 114, 120. But she does not claim she attempted to secure a hearing before the January 13, 2014 deadline on her citation, nor did she file a petition to vacate the failure to appear in the twenty days provided by San Francisco Superior Court Local Rule 17.1. *See* San Francisco Superior Court Local Rule 17.1(B) ("A Petition to Vacate the civil assessment must be filed within twenty (20) days from the date on which the Notice of Civil Assessment was mailed."). Instead, her allegations are based on her efforts to arrange a hearing in September 2014, approximately eight months after her initial deadline to appear had passed, and six months after the DMV had already sent her notice of her suspension. FAC ¶¶ 42-66.

Pursuant to the California Vehicle Code, once the Superior Court gives notice to the DMV that an individual has failed to appear on a traffic citation, the DMV is mandated to suspend the

9

driver's license. Cal. Veh. Code § 13365 ("If the notice is given pursuant to subdivision (a) or (b) of Section 40509.5 [failure to appear in court], and if the driving privilege of the person who is the subject of the notice is not currently suspended under this section, the department shall suspend the driving privilege of the person."). In *People v. Bailey*, 133 Cal. App. 3d Supp. 12 (App. Dep't Super Ct. 1982), a California appellate court considered whether the suspension of a driver's license without a hearing amounted to a denial of due process. The court concluded that "the determination of license suspension by the Department of Motor Vehicles without affording the licensee an opportunity for a hearing beyond the court appearances directed by the summons on the traffic citations sufficiently complies with the 'meaningful' and 'appropriate' hearing requirements of due process." *Id*. at 16. This reasoning is supported by the Ninth Circuit's recent affirmance of an Eastern District of California decision in which the district court addressed whether the plaintiff was provided with proper due process after the DMV denied his requests for a pre- and post-deprivation hearing relating to his "Failure to Appear" and subsequent license suspension. *Sheikh v. Kelly*, No. 14-cv-0751, 2014 WL 4197563, at *5 (E.D. Cal. Aug. 22, 2014), *aff'd*, 627 F. App'x 629 (9th Cir. 2015). The court found that "[b]ecause plaintiff is entitled to challenge the [failure to appear] in the court issuing the notices in the first instance, there is simply no due process requirement that plaintiff also be afforded an administrative hearing before the DMV to contest a suspension based on a [failure to appear]." *Id*.[6]

While I recognize that Marchetti is frustrated with the process she received, her allegations do not amount to a constitutional denial of due process.

**III.    THE ELEVENTH AMENDMENT**

Even if Marchetti had stated a claim under section 1983, the Eleventh Amendment prohibits suits for damages, declaratory relief, or injunctive relief against a state or its agencies for

---

[6]Marchetti's reliance on *Scofield v. City of Hillsborough*, 862 F.2d 759 (9th Cir. 1988) for the proposition that a court must provide a "post-seizure hearing" to contest a license suspension is misplaced. DMV Oppo. 12. *Scofield* considered, in relevant part, the question of whether the denial of a hearing after the towing of an unregistered car, as required by the California Vehicle Code, constituted a denial of due process. 862 F.2d at 764. No analogous facts are pleaded here; Marchetti does not claim her vehicle was towed nor does she allege a violation of the California Vehicle Code.

legal or equitable relief unless the state has waived its immunity or Congress has specifically overridden sovereign immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("[I]n the absence of consent[,] a suit in which the State or one of its agencies or departments is named as the defendant, is proscribed by the Eleventh Amendment. . . . This jurisdictional bar applies regardless of the nature of the relief sought."). "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under [section] 1983 in federal court, and the Supreme Court has held that [section] 1983 was not intended to abrogate a State's Eleventh Amendment immunity." *Dittman v. California*, 191 F.3d 1020, 1025-26 (9th Cir. 1999) (internal citations and quotation marks omitted).

The Ninth Circuit and district courts within this Circuit have already determined that the DMV, the Judicial Council, and the Superior Court are state agencies for purposes of the Eleventh Amendment. *Banks v. Dep't of Motor Vehicles for Cal.*, 419 F. Supp. 2d 1186, 1194 (C.D. Cal. 2006) ("[T]he Eleventh Amendment bars plaintiff's . . . cause of action against defendant DMV, a state agency.") (internal citations omitted); *Wolfe v. Strankman*, 392 F.3d 358, 364 (9th Cir. 2004) (affirming the district court's dismissal of the California Judicial Council as a defendant because it is a state agency); *Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1110 (9th Cir. 1987) ("We conclude that a suit against the Superior Court is a suit against the State, barred by the eleventh amendment.") (internal citations omitted). Therefore, the Eleventh Amendment bars this court from asserting jurisdiction over Marchetti's section 1983 claim against these defendants.[7]

The Eleventh Amendment's prohibition of actions against state agencies also applies to state officials when they are sued in their official capacities. *Stivers v. Pierce*, 71 F.3d 732, 749 (9th Cir. 1995).[8] The Eleventh Amendment's bar remains in effect for state officials because "a

---

[7] Marchetti attempts to rely on *Monell v. Dept. of Social Services of New York*, 436 U.S. 658 (1978) to argue that "under *Monell*, since this suit is the result of the official policy of the Superior Court and DMV they will have responsibility not under *respondeat* superior [sic], but be responsible for their own policies." Oppo. 14. But the holding in *Monell* is limited to municipalities, and does not apply to state courts or agencies. *See Monell*, 436 U.S. at 691-95.

[8] Marchetti's new conclusory allegation that Guinasso and Santos acted in their "private capacity" is implausible on its face as she continues to assert that they acted "within their positions as deputy clerks" and acted as "government agents." FAC ¶¶ 9, 105. Marchetti alleges no facts indicating

11

judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents." *Brandon v. Holt*, 469 U.S. 464, 471 (1985). Therefore, the Eleventh Amendment prohibits Marchetti's section 1983 claim against Guinasso and Santos to the extent she is seeking anything other than prospective relief. *Ex parte Young*, 209 U.S. 123, 159-60 (1908) (holding that the Eleventh Amendment does not prohibit suits against state officers sued in their official capacity "for prospective relief from an ongoing violation of federal law").

### IV. JUDICIAL IMMUNITY

Judicial immunity also poses an obstacle to Marchetti's section 1983 claim. Judges and persons performing judge-like functions are entitled to immunity against monetary damages for actions taken while performing duties related to the judicial process. *Stump v. Sparkman*, 435 U.S. 349, 355 (1978). In addition, section 1983 prohibits the grant of injunctive relief against any judicial officer acting in her official capacity "unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Judicial immunity is available unless a judge acts in "clear absence of all jurisdiction," or performs an act that is not judicial in nature. *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986). Court law clerks also enjoy judicial immunity when performing roles integral to the judicial process. *See In re Castillo*, 297 F.3d 940, 952 (9th Cir. 2002); *see also Quigley v. Contra Costa Cty.*, No. 98-cv-3137-BZ, 1999 WL 1216049, at *3 (N.D. Cal. Dec. 13, 1999) (finding municipal court clerks who effectuated the suspension of plaintiff's license by notifying the DMV of plaintiff's failure to appear were immune against plaintiff's claims).

Guinasso and Santos are being sued for denying Marchetti's requests for a hearing. These actions are integral to the judicial process because they constitute enforcement of the court's procedures regarding hearings and traffic citations. *In re Castillo*, 297 F.3d at 952 ("[W]e have extended absolute quasi-judicial immunity. . . to court clerks and other non-judicial officers for purely administrative acts – acts which taken out of context would appear ministerial, but when

---

that Guinasso and Santos acted within their private capacity and her own complaint contradicts this allegation. I therefore construe Marchetti's allegations as attempting to hold Guinasso and Santos liable in their official capacities. *See Id.*

viewed in context are actually a part of the judicial function."). Marchetti's section 1983 claim against Guinasso and Santos for either damages or injunctive relief is barred by judicial immunity.

## V. CALIFORNIA CIVIL CODE SECTION 52.1 (SECOND CAUSE OF ACTION)

California Civil Code section 52.1, also known as the Bane Act, prohibits interference or attempted interference "by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States." Cal. Civ. Code § 52.1. To prevail on a Bane Act claim a plaintiff must demonstrate that: (1) defendants "interfered with [a plaintiff's] constitutional or statutory rights;" and (2) "that interference was accompanied by actual or attempted threats, intimidation or coercion." *Campbell v. Feld Entm't, Inc.*, 75 F. Supp. 3d 1193, 1211 (N.D. Cal. 2014) (citation omitted).

Marchetti claims that defendants interfered with her enjoyment of her constitutional rights by "means of threat, coercion, and extortion." FAC. ¶ 131. Because Marchetti has not established a violation of her constitutional or statutory rights, this claim also fails.

## VI. DECLARATORY AND INJUNCTIVE RELIEF (THIRD CAUSE OF ACTION)

Marchetti seeks declaratory and injunctive relief to prohibit "any further fines and suspension of driver's licenses absent constitutional notice and an opportunity to be heard." FAC. at p. 35. Neither declaratory nor injunctive relief is an independent cause of action. *See, e.g.*, *Camp v. Board of Supervisors*, 123 Cal. App. 3d 334, 356 (Cal. Ct. App. 1981) ("Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted."); *Wishnev v. Nw. Mut. Life Ins. Co.*, No. 15-cv-03797-EMC, 2016 WL 493221, *17 (N.D. Cal. Feb. 9, 2016) ("Declaratory relief is not an independent cause of action or theory of recovery, only a remedy."). Because the complaint fails to state a claim under which any relief can be granted, Marchetti is not entitled to either injunctive or declaratory relief.

## CONCLUSION

Defendants' motions to dismiss are GRANTED and the FAC is DISMISSED without leave to amend. Because Marchetti has not been able to resolve the deficiencies in her complaint in this amended complaint, and did not identify any additional facts that could be added to an amended complaint, for the reasons stated in this Order and the prior one I conclude that

13

1  additional leave to amend would be futile.
2  **IT IS SO ORDERED**.
3  Dated: September 7, 2016

WILLIAM H. ORRICK
United States District Judge